THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHAWN R. WASHBURN | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:05-CV-774 RM |
| | ) | (Arising from 3:03-CR-17(01)RM) |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

OPINION AND ORDER

Shawn Washburn pleaded guilty to knowingly and intentionally possessing with the intent to distribute 24.29 pounds of methamphetamine in violation of 21 U.S.C. § 841(a); he was sentenced to 179 months' imprisonment. He files his petition for a writ of habeas corpus under 28 U.S.C. § 2255, and for the reasons that follow, the court denies his petition.

Mr. Washburn's guilty plea was pursuant to a plea agreement conditioned on his right to appeal the denial of a motion to suppress.[1] He now challenges both his conviction and sentence on several grounds. He says his counsel was ineffective (1) "in failing to interview the government informant whose name and whereabouts were given to him prior to the suppression hearing in this case," (2) "in failing to object to the reference of the informant's testimony or information by agents who testified at the suppression hearing where the informant was not cross-examined," (3) "in failing to argue against the enhancement that stemmed from the quantity of drugs used for sentencing," (4) in failing to argue that

---

[1] Mr. Washburn did appeal the denial of his motion to suppress, and the court of appeals affirmed. SEE [Doc. No. 54 of Cause No. 3:03-CR-17].

Petitioner was entitled to a 2-levels reduction under the safety valve," and (5) "in entering into a plea agreement with 'waiver provisions' pertaining to sentencing when he had failed to properly challenge the manner in which [the] sentence would be imposed."

The government responds by arguing Mr. Washburn has waived his right to file any § 2255 motion in his plea agreement. A waiver of the right to file a § 2255 petition will be effective if it is knowing and voluntary, and if the defendant cannot establish ineffective assistance of counsel in negotiating the agreement. Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999). Still, a court must carefully examine a waiver and limit it to its terms. Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000).

Mr. Washburn contests the voluntariness of his waiver by claiming he received ineffective assistance in negotiating his plea agreement. He says counsel assured him that he couldn't receive more than ten years, and with this understanding he entered in the agreement. His claim, however, cannot succeed because it is "belied by his own statements at the change of plea hearing, which are presumed as truthful." Bridgeman v. United States, 229 F.3d at 592.

Mr. Washburn acknowledged during his plea colloquy that he had read the plea agreement and understood its implications. The court asked him if he understood that he faced a mandatory minimum sentence of ten years if he lost his motion to suppress. Mr. Washburn replied twice that he understood. The court

2

also explained to Mr. Washburn that "nobody can tell you, other than the mandatory minium and the maximum, exactly what the sentence will be… ."

Like the petitioner in Bridgman v. United States, Mr. Washburn was aware of the consequence of his guilty plea despite counsel's alleged predictions. Id. His plea was an intelligent choice among the alternate courses open to him, and one for which he received the bargained benefit. See Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003). Mr. Washburn's counsel was effective in negotiating his plea agreement and nothing in the record suggests his plea was unwitting or involuntary.

The waiver clause in his plea agreement provides, "I expressly waive my right to appeal my sentence on any ground … I also agree not to contest my sentence or the manner in which it was determined on any ground in any post-conviction proceeding," specifically including a petition under § 2255. The government says Mr. Washburn has waived the right to file any § 2255 motion, but this argument overstates the scope of his waiver, which covered only appeals or collateral attacks on his sentence, not his conviction. The agreement is silent as to a waiver of a challenge to his underlying conviction, so it doesn't foreclose collateral attacks outside of sentencing issues. Bridgeman v. United States, 229 F.3d at 591-592.

Grounds three and four of Mr. Washburn's motion address his counsel's performance during his sentencing, so these arguments have been waived. But his plea agreement and subsequent conviction were conditioned on the outcome of the

3

suppression hearing, so an attack on his counsel's performance at that hearing, addressed in grounds one and two, goes to his conviction and therefore hasn't been waived.

To succeed on his claim of ineffective assistance of counsel, Mr. Washburn must show his attorney's' performance at the suppression hearing was "objectively unreasonable or deficient and that he was prejudiced as a result." Strickland v. Washington, 466 U.S. 668, 687 (1984). "[T]here is a strong presumption that [an] attorney performed effectively," Berkey v. United States, 318 F.3d at 772, and "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). "Even if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" Eckstein v. Kingston, 460 F.3d 844, 849 (7th Cir. 2006) (quoting Strickland v. Washington, 466 U.S. at 694). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence before the judge." Id. (quoting Hough v. Anderson, 272 F.3d 878, 891 (7th Cir. 2001)).

Mr. Washburn first argues his counsel was ineffective by failing to interview or call David Morgan as a witness at the suppression hearing. Mr. Morgan is a cooperating informant who was found in possession of methamphetamine and provided information that led to Mr. Washburn's eventual arrest. He says Mr.

4

Morgan would have testified that he "did not give any [ ]police officers a description of any vehicle that [Mr.] Washburn would drive to the Weston Plaza …," "did not know that [Mr.] Washburn would be driving a 'white conversion van with graphics on the outside, with wood grain interior, and a black bag on the console,' " and didn't "tell any officers that [Mr.] Washburn would be bringing drugs in any particular bag to the Weston Plaza."

He says Mr. Morgan's affidavit negates the probable cause to search his van, so his counsel was ineffective in not calling Mr. Morgan to contradict the officers' testimony at the suppression hearing. The court cannot agree. Even assuming Mr. Morgan's sworn statement is true, nothing in his testimony changes the outcome of the suppression hearing, so the court cannot say Mr. Washburn has suffered any prejudice by his counsel's decision not to call Mr. Morgan.

Mr. Washburn doesn't point to any evidence that controverts the officers' testimony that after the Mr. Morgan was found in possession of ten one-pound packages of methamphetamine, he gave a statement that had gotten the methamphetamine from Mr. Washburn, as he had done on other occasions. Officers also testified at the suppression hearing that Thomas Wright, a co-informant arrested with Mr. Morgan, corroborated the statements about the source of the methamphetamine.

Nor does Mr. Washburn dispute that Mr. Morgan placed two monitored phone calls to him, which officer recorded and later reviewed. In the first call, the officers heard the person reported to be Mr. Washburn reply affirmatively when

5

Mr. Morgan said, "they had some extra cash and shit, they was talking about wanting to pick up some more. ... So, ah, if you want we just do them, them two that, that we had set aside earlier ... Plus, ah, ten more... And we should be ready to rock and roll when we get there." In the second monitored call, the police heard the person reported to be Mr. Washburn tell Mr. Morgan to meet him at the Weston Plaza in twenty minutes. Mr. Washburn also doesn't deny that Elkhart area officers staked out the Weston Plaza parking lot.

Probable cause to search exists when there is a fair probability that an officer will find contraband or evidence of illegal activity at a specified location based on the totality of the circumstances. United States v. Washburn, 383 F.3d 638, 642 (7th Cir. 2004) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). "Probable cause is a 'fluid concept,' " Id. (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)), "and when an informant is involved, it may turn upon the informant's reliability, basis for knowledge, and degree of detail, as well as the ability of the police to corroborate the information." Id. (citing United States v. Johnson, 289 F.3d 1034, 1038-1039 (7th Cir. 2002)).

Mr. Morgan's self-incriminating and corroborated confession that he had bought drugs from Mr. Washburn establishes probable cause that Mr. Washburn was involved in illicit narcotics trafficking. *See* United States v. Washburn, 383 F.3d at 643. That information, along with the recorded phone calls that officers monitored, also establishes a fair probability that Mr. Washburn's motor vehicle contained contraband or evidence of criminal activity when it arrived at the

Weston. Mr. Morgan's sworn statement that he never told officers that Mr. Washburn would have drugs on him is irrelevant because the arresting officers were able to confirm independently that Mr. Washburn was engaged in criminal activity based upon the earlier drug transaction and the arraigned narcotics purchase. *See* United States v. Huebner, 356 F.3d 807, 816 (7th Cir. 2004) ("Given the highly detailed and thoroughly corroborated information pertaining to Huebner's illicit drug dealing activities that law enforcement officers acquired from Cardella-a known, confidential informant-the task force reasonably concluded that there was a 'fair probability' that narcotics would be found in the defendant's Jeep Cherokee at the time he was stopped."); *see also* United States v. Navarro, 90 F.3d 1245, 1253 (7th Cir. 1996).

Mr. Morgan's testimony suggests, at most, that the arresting officers didn't know the type of vehicle Mr. Washburn would be using for the controlled buy, but this isn't sufficient to destroy probable cause that he would have methamphetamine on him. *See* United States v. McClinton, 135 F.3d 1178, 1183 (7th Cir. 1998) (courts don't require an informant to be correct 100 percent of the time to establish probable cause). Even if Mr. Morgan omitted the specifics of Mr. Washburn's vehicle, his prior statements about Mr. Washburn dealing methamphetamine were corroborated when Mr. Washburn arrived at the Weston in a van registered in his name at the precise time the target said he would arrive for the controlled buy. United States v. Navarro, 90 F.3d at 1254 ("because the surveillance preceding the stop corroborated the information from the informant,

the law enforcement officers had probable cause for both arrest and search."); United States v. Ganser, 315 F.3d 839, 843 (7th Cir. 2003) ("If an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity."). Only at this point was Mr. Washburn subject to a detention, search of his vehicle, and eventual arrest. The testimony Mr. Morgan would have given wouldn't negate probable cause to search Mr. Washburn's vehicle, so Mr. Washburn cannot show he suffered any prejudice by any alleged failure to call Mr. Morgan at the suppression hearing.

Mr. Washburn also argues his counsel was ineffective in failing to object to out-of-court statements used against him during the suppression hearing. He says the officers' testimony as to Mr. Morgan's statement violates the confrontation clause of the Sixth Amendment. In support of his argument, he cites Crawford v. Washington, 541 U.S. 36, 59 (2004), in which the Supreme Court held that in a criminal prosecution the Sixth Amendment forbids the introduction of an out-of-court testimonial statement unless the witness is unavailable and the defendant has previously had an opportunity to cross-examine him. Id.  Mr. Washburn's reliance on Crawford is misplaced.

Application of Crawford v. Washington to a pre-trial suppression hearing is an issue of first impression in this circuit, but the court is guided by to long-standing legal principles: (1) hearsay evidence is admissible at pre-trial suppression hearings, United States v. Raddatz, 447 U.S. 667, 679 (1980), and

8

(2) the Sixth Amendment "right to confrontation is a trial right." Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987). Nothing in the Crawford v. Washington opinion, nor the cases that followed, suggest an intent to change these principles. To the contrary, cases decided after Crawford v. Washington reaffirm the admissibility of hearsay statements at suppression hearings. *See, e.g.*, United States v. Del Rosario, 388 F.3d 1, 12 n.5 (1st Cir. 2004); United States v. Miramonted, 365 F.3d 902, 904 (10th Cir.2004). Moreover, courts that have addressed the application of Crawford v. Washington have declined to extend the holding to other non-trial proceedings. *See, e.g.,* United States v. Martinez, 413 F.3d 239, 242-243 (2nd Cir. 2005) (not applicable in sentencing proceedings); United States v. Martin, 382 F.3d 840, 844 n.4 (8th Cir. 2004) (not applicable in supervised release revocation hearing).

Introduction of Mr. Morgan's statements at the suppression hearing didn't violate Mr. Washburn's Sixth Amendment rights, so his counsel had no basis to object to such testimony. The performance of Mr. Washburn's counsel at the suppression hearing wasn't objectively unreasonable and his motion on this ground is denied.

For these reasons, the court DENIES Mr. Washburn's petition filed pursuant to 28 U.S.C. § 2255 [Docket No. 2 of Cause No. 3:05-CV-774RM].

SO ORDERED.

Entered:   December 14, 2006

        <u>    /s/ Robert L. Miller, Jr.    </u>
        Chief Judge
        United States District Court


cc: D. Schimd
   S. Washburn